number 25-2184 Jose Ramiro Mejia-Henriquez against Attorney General. Mr. Nolette. Thank You Judge Hardiman and may it please the court and we'll just note it's great to see. Hoya is very well represented in in the courtroom this morning. As Judge Hardiman noted my name is John Nolette. I'm from Wiley Ryan in Washington DC and I am pro bono counsel for petitioner Jose Ramiro Mejia-Henriquez in this case. I'd like to reserve three minutes for a bubble. Granted. According to the record in this case, torture in Salvadoran prison is pervasive, widespread, deliberate, and systemic and those publicly suspected of gang membership such as Mr. Mejia-Henriquez are at the highest risk of experiencing this systemic torture. But the immigration judge denied Mr. Mejia-Henriquez's request for a deferral of removal under the Convention Against Torture which the BIA summarily affirmed. Given the record the agency could reach this results only by disregarding the overwhelming record evidence and by misconstruing and misapplying the governing legal standards. Before you get into the merits could you talk about mootness? Your client has been removed. Is he still housed at El Peñalito? He is not. He's been ECF number 27-2. We included a record that we were able to get from the criminal proceedings in the case against him in El Salvador and he has since been moved to the prison that is known as San Luis Mariona or La Esperanza. La Esperanza. Okay but he's not at CCOT. That's correct. Okay all right well but tell us why the case is a live controversy in light of the fact of his current residence. Yes your honor thank you. Four reasons in kind of in descending order. First in this court's decision in P.S. Chacon-Villegas particularly footnote 5 of that decision that was a cat deferral only case and the court explicitly held that the fact of the petitioner's removal from the country I believe he was a Colombian in that case but he had been he had been removed from the country and this court explicitly held that the case was not moot under the collateral consequences exception to mootness. I'd also point out second reason the appears that the four circuits that have squarely considered this question all have agreed that you know in cat deferral only contexts removal from the country does not moot out a case. I would point this court in particular to the Fifth Circuit's decision just last year and Aguilar Quintanilla where in very similar circumstances it was a Salvadoran who you know was was removed I believe the state of removal was denied in that case and was removed to El Salvador. Upon his removal he the government took photos of him on his knees depicted between two two soldiers who prison officials branded him a terrorist and said that they were actually going to you know seek justice against him and the Fifth Circuit found that there was no no mootness in in those circumstances. The the third third reason I just point this court to the Supreme Court's decision in the Chafin versus Chafin case it was a slightly different context it was a hay convention a child custody dispute but many many of the very same considerations that that arise in the cat deferral only context once somebody has been removed from the country and the court articulated you know the standard that had articulated before that in this context the requirement is impossibility of effectual relief and in that case the court found that there was quote no law of physics that would prevent relief and so no matter how doubtful no matter how uncertain relief effectual relief would be the case was nevertheless not moot so and then the fourth reason that I'd provide your honors is that this court does have the authority to to order the facilitation of his return and and by virtue of that authority effectual relief is available. All right but there seemed to be collateral consequences required right it can't be an idle exercise that he's brought back to the country that would just be a waste of time and money for everybody and give your client false hope so there has to be sort of some chance right that he'd be returned what tell us your dream scenario how you know you win you win across the board how does he get relief and get back here? Well if we win and you know it was a full reversal because he is you know this court decides that he is entitled to to cat relief on the record then you know the government has has every interest in ensuring that cat is enforced that people are not in countries where they're subject to torture and so the government has every interest in facilitating his return short of that you know even if this was a reverse and remand situation for for further consideration you know in particular given given the the state of affairs that has happened since he's been removed the fact that he's been detained in San Luis Mariana which you know as the record reflects some of the worst abuses that are going on in El Salvador right now are happening in that prison you know how one of the highest rates of in in custody deaths is happening there we'd you know like they explore reopening or you know if the you know the agency has significant discretion to decide how it wants to conduct the proceedings from there and we would we would argue that he he need be brought back for in-person testimony is he being held on the charge that you argued he would be facing if he got back there is that why he's being held or is he just just being held because we returned him it is the extortion charge yeah it's what the the extortion charge there the indictment that was the subject of some some back-and-forth in the administrative proceedings but as well as the public news articles that publicly identified him as an ms-13 member involves with that infamous politician in that extortion scheme it is those proceedings well we're talking prerequisites can you please walk us through your theory of jurisdiction in this cat only appeal in a case where your client didn't challenge the actual final order of removal well under the cat 2242 be that a cat deferral only a case can be can be challenged or 1252 a do you think it's that simple it's just a straightforward application and as well yes okay if unless there any further questions on the the subject of to pivot to and focus on the issues that we raised in our briefs I would like to focus in particular on the the issue of the agency ignoring material evidence to the cat claim and you know if time permits and of course is the court like to ask questions otherwise happen to address the other the other subjects but to discuss the the issue of the the agency ignoring the evidence you know this court has wrecking can I I want to try to set that up for you to help you and for for us to have an efficient conversation about this we see this argument made frequently that an agency ignored evidence right and I think the quotation from your brief was the agency quote ignored voluminous record evidence that's at page 30 of your brief and the way that that charge goes is that because the IJ's decision or the BIA's decision didn't say thus and such the inference is that it ignored it I've never quite understood why that's the logical inference that sort of asks us to presume that everything that the agency doesn't write about was ignored so it's sort of asking us to give a presumption of irregularity to the proceedings in the agency and and I'm or the board was awake and paying attention and listening the fact that something isn't mentioned in an opinion but it was part of the record why wouldn't we just accept and assume that it was considered just not mentioned in the opinion the issue is not not simply a failure to explicitly state you know this court of course has recognized that a treatise doesn't need to be written you know exegesis on every single data point but that in cases whereas here the record evidence is distorted and mischaracterized overlooked based upon what the IJ did write you know it falls within the four corners of many of this court's decision. All right well misconstruing etc is not ignoring ignoring is ignoring that's different so tell us maybe it's fruitful to start with where the the agency misrepresented or misunderstood the record why don't you start there. Gladly your honor so you know to start one the recurring refrain in the IJ's decision was that this was a poor prison conditions case the IJ used that term multiple times it cited to this court's decisions in August versus Ridge and Dennis and Pierre that were all these Haitian poor prison conditions cases where you know it was very clear there was in quote no evidence this court said in those cases that the conditions were deliberately being perpetuated to inflict severe pain and suffering which is the requirement under cat and there's there's no word there was there was passing reference which is very similar to what you know with the the IJ did in Piesa con Viegas which this court found problematic very similar to what the agency did in the Quinteros case that this court found problematic a passing reference to generally the the country reports and country conditions evidence but again to the IJ this was just this showed poor prison conditions when in fact the record evidence I mean even the State Department report talks about the systemic torture happening in what is what is systemic torture mean I mean that I think we can agree on these facts correct me if we can't under the state of exception the Bukele regime has incarcerated upwards of 80,000 people the regime has indicated that some 8,000 were released as as deemed innocent I believe as many as 350 have died in prison so what is systemic mean does that mean that 80,000 people are tortured does that mean 40,000 people are tortured does that mean a thousand people are tortured what does that mean I mean just to use some of the language from from some of the reports in the record taking the releasees you know what one of the ways in which the record was distorted the IJ looked at the 7,000 releases as if this was somehow evidence that you know there's not a significant enough problem going on you know the reports reflected that that everyone that these these human rights organizations talked to you know including hundreds of releases they'll test either to what they themselves had experienced or what they you know were firsthand eyewitnesses to on a daily basis quantification is a challenge in this context but it's a challenge because of the active suppression of information again that's reflected throughout the record but that sounds like you're you're asking us to write an opinion that's sort of big that says there's systemic torture here you haven't really linked up your guys situation you haven't linked up me here Enriquez that he personally is going to be tortured the fact that some people are tortured let's let's assume that some people are being tortured in these prisons that doesn't tell us anything about whether me here Enriquez will be tortured yeah so we don't think the court needs to write a you know big opinion whatever precisely you mean by that well systemic your word that's why I said big I mean if the case is if the evidence that your client will be tortured for these reasons then we can focus on that but I don't hear you telling us other than sort of vague assertions that he's a gang member and he has tattoos but meanwhile his tattoos are about his family they're not we see ms-13 tattoos all the time or kai de ceo cho tattoos and he doesn't have any of those so is this case about your clients specific facts or is this case about the conditions of El Salvador and prisons writ large well you know and let me be clear I by no means me to run from the what the record shows which is that the conditions in Salvador in prison are I mean hell is the word that is used repeatedly throughout throughout the record describing the conditions that are there and I don't mean to run from that at all that said this is this this is a case about mr. may he Enriquez and we have put forward arguments for what his particularized risk is in particular I think you know most most saliently is this very public accusation it was in the national news media that linked him up with this infamous politician Raul Raul mi hagro was his name who kind of led this extortion scheme and and mr. Mejia Enriquez was indicted as one of the you didn't challenge the non-credit the credibility determination at the IG made that's he was found not to be credible that's so are we to assume that really if he was found not to be credible the only thing that this case is about is a country conditions because what else is there I mean if there's a this negative credibility determination if we're looking at country conditions and this issue is whether or not anybody can go back to El Salvador who's gonna face prison well it's the country conditions evidence as well as again you know there were I believe there were four different news articles in the record that went unchallenged in fact the IJ you know they question the indictment about this extortion scheme and there was some issue over that there was no question that these news articles in fact the IJ you know affirmatively found that he was likely mr. Mejia Enriquez was likely to be arrested you know by virtue of what those news articles demonstrated you know purely objective evidence that was in the record identifying him you know by face depicting him and linking him up with this alleged extortion scheme that was being run again by this very famous politician and you know that in particular is you know one IJ find that part of his testimony credible which part the the part that he was linked to politician or are you saying that that documentation is sufficient to supplement the country condition reports the IJ found that documentation was enough the IJ affirmatively found he was likely to be arrested upon arriving in El Salvador because of those news articles you know again he had concerns about the indictment but even right but getting arrested charged with a crime that doesn't get you anywhere but a very high-profile you know extortion scheme but this infamous infamous politician who as dr. Bishop noted in her report well in prison if if this infamous politician had ten guys that were extorting people and six or eight of them got sent back to El Salvador and all six or eight of them were tortured now you got a pattern now you got a very credible argument that will it stands to reason the same thing's gonna happen to Mr. Mejia Enriquez you don't have anything remotely like that again you know what the record does reflect is that getting information on detainees is incredibly difficult one the Salvadoran government has deemed confidential every single one of the criminal cases that's taking place under the state of exception in addition the government is actively refusing requests that it is required to comply with to provide information it has prohibited like the way to saying that that you're unable to prove your case because of the dearth of information well we have you want us to take the dearth of information and say that there's some adverse inference that causes you to win the case under some presumption because of the dearth of evidence no no it's not that it's you know we win by virtue of a dearth of evidence it's that taken together what evidence is available which is you know tip of the iceberg it's at least the is that 350 people have been have died in Salvadoran prisons it's a reasonable inference that some of them were sick some of them might have been tortured some of them might have been killed who knows well you know but that that doesn't tell us whether you know 350 out of 80,000 and you know I don't want to minimize the 8,000 innocent people that were released but even the 8,000 innocent who were released is there evidence that they were tortured yeah yes your honor I'd point you to I believe is the the El Faro article about the schoolteacher who was rounded up right how many of the 8,000 how many of the 8,000 innocent to release this have credibly said you know I was tortured it just my point is it seems it seems episodic and I don't know that there's anything in the record that have that is tied episodes of prison mistreatment or even torture to your client's case well respectfully your honor again the what what what evidence that organizations have been able to develop the State Department has acknowledged you know provide you know credible incredible you know what credible information there is that can be ascertained they have interviewed hundreds of releases they have spoken to you know they've gotten funeral records they've spoken with families to the extent that families have been willing to discuss you know many aren't because they're afraid of the you know the government and and whatnot they have they have cast as broad a net as as imaginable to then you know systematize and and make you know make informed judgments with with the you know the incomplete information they have and what they have determined is that you know these conditions in Salvadoran prison are systemic it's you know the torture is systemic it's widespread it's pervasive and you know to the extent that that is not enough it is at least the baseline upon which mr. Mejia Enriquez his cat claim is established which is that he you know more so than your average state of exception detainee faces the he is at the highest risk of facing that systemic widespread torture that's happening in Salvadoran prison because of again the particulars of his own background his criminal history fit into our tests from Pierre the Pierre case with respect to this what you've described as well he's in a category that might be more likely doesn't sound like that specific information about your client well again your honor because he's been publicly named identified as an ms-13 member in national news and linked up with this infamous politician again who has since died and in custody in El Salvador we you know that is that is exactly what what Pierre said would be needed what what August and and Dennis and and you know this court's cases have said would be needed is that sort of you know particularization that distinguish him from anyone else who is alleged to be a member of ms-13 who may be fighting seeking cat relief in this country well again I mean this the particulars of his case are this this very high-profile indictment linked up with this very infamous politician not just some you know some random ms-13 gang member it's you know he he stands out among let me put it this way to you know to state it succinctly mr. McGee Enriquez stands out among the group of individuals that are at the highest risk of facing torture you know where the baseline is systemic and widespread torture taking place all right thank you mr. Lillette mr.  good morning may it please the court Mike Weisbrook for the Attorney General this petition is moot and even if not it should be denied a petition for review challenging only a denial of cat protection from deportation is logically mooted by deportation because such a petition doesn't concern the underlying removal order there are no collateral consequences at play that's at least true in the absence of some executive branch policy of facilitating return from deportation and treating the petitioner as if he had never been deported so courts have held that when the ice directive one one zero six one point one applies that a case might not be moot and I'm willing to assume that's right but it has nothing to do with this case for multiple reasons on page 41 of petitioners opening brief he conceded that the ice policy doesn't apply the ice would not facilitate petitioners return because he's detained in El Salvador and I've confirmed with DHS if that's true the facilitation of return policy is about providing a travel document coordinating with CBP it's not about securing release from foreign custody so this if we granted cat relief that might change actually the facilitation of return policy itself when it does apply it contemplates a future grant of of cat relief like like a future grant of cat relief is the minimum for the policy to potentially apply but it doesn't apply to a someone who's detained on foreign soil in fact expressly the policy is just we'll give you a little bit I mean you could you could see as a string of of possibilities perhaps not likely but he might cease to be detained he might be released tomorrow he might be tried and found innocent so there are myriad possibilities right right so a couple things on that the classic formulation for avoiding mootness is that the petitioner continues to suffer an injury that's likely to be redressed by a decision a possibility isn't enough Spencer V Kenma Supreme Court decision says we deal in likelihoods and probabilities not mere possibilities this court's decision in the Berkey V Marbury says the same thing there needs to be a concrete expectation that something like okay well if he wins the cat claim and he's sitting in a Salvadoran prison on an extortion charge isn't it likely that he'll be released at some time I mean it's are you saying are you saying that it's likely that he'll do a life term because of an extortion charge my point is that I have no idea and it needs to be so there's a possibility there's a possibility is not enough like the Supreme Court has been very clear on that there needs to be a concrete reason to expect that circumstances will change does the department have any specific information on where he is and why he's being held currently working on that don't have info from DHS yet willing to accept their filing saying that he's held pursuant to this extortion charge if anything I think that helps us it that he is detained it reinforces the Muniz point and judge Hardman to your to your question I think another way to sort of frame the Muniz inquiry is to be effectual the relief that this court needs to provide has to have either a present or non-speculative future effect and the effect that you're talking about about well the criminal proceedings might change is is quintessential speculation but even if you disagree with me I still think this case is me even if you think that he would be released like acquitted and released in El Salvador the sort of I think one of your honors mentioned sort of scenario right you said you're working on it yeah how long do you think it would take you to get information that could be used to supplement the record I was hoping to this morning so hopefully I'll have it soon and as soon as I do I'll notify the court did you intend to move to supplement the record with that information I intend to provide the court with any relevant information okay yes so but but just to be clear my Muniz argument doesn't exclusively hinge on his ongoing detention pursuant to foreign criminal proceedings the facilitation of return policy has an extraordinary circumstances exception and in the cases that have held that the facilitation of return policy saves a petition from mootness the government has represented that the petitioner would ordinarily or probably have his return facilitated under the policy here it's the exact opposite it's extremely unlikely that this petitioner would have his return facilitated the exception to the policy it contemplates national security concerns and also as the Tenth Circuit recognized an Iggy board be bar an ongoing ongoing prosecution would also be a separate separate ground so he in theory he could be released pending trial in El Salvador right so so what I'm saying is national security concerns because he's a suspected member of a he can't have it both ways you can't say that he's he's not an ms-13 member because his tattoos are of his family but he is an ms-13 member when when you want him to be that I'm not having it both ways I'm saying for mootness purposes the fact that he's a suspected ms-13 member is a national security concern that doesn't that would render that that was a news has he been charged with that I thought he was charged with extortion he was charged with extortion in El Salvador but according to petitioners counsel he was identified as an ms-13 member. In a news report that's not that's not evidence. No your honor in an ICE facility and he was moved within that facility this is in the record he was moved for his own safety within that facility now they didn't press that argument before the agency so that fact so the IJ and the giving limited weight to this idea that he's a suspected gang member but we can still recognize it now for mootness purposes and say and I've confirmed with with DHS that it's extremely unlikely that a suspected terrorist would not only have the ICE policy apply but then be paroled back into the country by CBP and just to give the court clarity on how this works procedurally the ICE doesn't control CBP so for someone to actually be physically returned to the country ICE would have to determine that its policy applies but then CBP would also have independent authority not to parole that person back into the country so you would need to sort of separate components of DHS to decide that it's in the it's in the public interest and it's not an extraordinary circumstance to facilitate the return and parole back into the country that's you're making you're making the broad argument then that that anytime someone is removed from the country and they have a cat claim pending the case is going to be moot I'm not making that because CBP might there's a substantial chance CBP is not going to let them back in the country no no there's a substantial chance that CBP won't let a suspected terrorist back in the country and can you speak to how the petitioners criminal record factors into that analysis for DHS absolutely criminal history both in the United States and in El Salvador can both be extraordinary circumstances for purposes of the ICE policy and can be a reason to deny parole with CBP and often is a reason to deny parole by CBP so what we have is what we have is not may we only consider lawful entry when we look at the consequences what if he sneaks through again so it happens it might happen again in the future right the Supreme Court has said that in Spencer v Kenma that a mootness argument that hinges on the the person who's arguing that the case is a moot that hinges on them breaking the law is not a valid argument to avoid okay I think we there's Supreme Court decisions about well you know you my challenge to my parole revocation it's not moot because even though I've served the full underlying prison term it's not moot because if I get arrested again and if I'm on trial again that parole revocation could be used against me and the Supreme Court has said that's way too attenuated and it hinges on you committing another criminal offense so so yeah so you can't consider that the classic collateral consequence is when it's not just a pure challenge to cat deferral it's a it's a challenge to a removal order and there's a collateral consequence of inadmissibility you're barred from returning to the country for ten years so even though you're already out your petition still has real concrete consequences just not sure Spencer's a habeas case I'm not sure we should import that into the immigration context or assume that it applies as a perfect match in the immigration context you have any immigration cases that help us with this mootness question well there I think there are a few on a few different levels so I guess out of circuit you've got Fifth Circuit and Ninth Circuit have indicated that when the ice facilitation of return policy isn't at play deportation of someone challenge when it isn't at play correct but but it's not how do we know it isn't a player that's that's the problem that's a that's an unknown that I'm wrestling with yeah I look at the ice policy you haven't revoked the administration the current administration hasn't revoked 1106 1.1 has it right that's correct so it's a beginning of it says may continue to litigate their petitions after their removal from the United States but I guess your initial argument was that what comes before that is aliens who petition the Circuit Courts of Appeals for review of their administrative removal orders and your argument is that he did not petition this court for review of his administrative removal order well he petitioned this court saying that right there was an error in denying him cat relief that's correct and that's a critical distinction here it is a distinction I want to be I want to be completely completely candid when I we appreciate that yeah yeah good well when I read the ice policy I don't think it applies to cat deferral at all because of what you just said when someone brings a pure cat deferral claim the text of the policy clearly doesn't apply it also speaks to treating the alien as having been restored to their status before having reverted to the immigration status he held if any prior to that where where the policy are you reading this is in the middle of paragraph 2 ice will regard the returned alien as having returned it reverted to immigration status he held if any prior to the entry of the removal order cat deferral doesn't do that cat deferral is protection from removal it has nothing it has no bearing on the validity of the underlying removal order if you're granted cat deferral you're still that's further textual evidence that this does not apply to cat only claims right but the problem judge Hardiman in candor is that in the past ice has applied the equivalent policy so we've got a course of dealing that seems inconsistent with the plain language of the directive exactly but to your question about the text paragraph 3.1 defines what it means to facilitate an alien's return issuing a boarding letter to permit commercial air travel and if warranted parole the alien into the United States the accompanying FAQs make clear that is the extent of the policy you get a travel document and and we will basically coordinate with CBP so that if they're not going to let you in we'll tell you or your counsel it's not worth you buying a plane ticket so again there's sort of two component steps to that process and my point is that when someone's detained when someone's a suspected member of a foreign terrorist organization when someone has petitioners criminal history there is basically a zero chance of them being into the country unless there's some overriding national interest like if they were going to testify in a huge criminal trial against some kind of kingpin there's nothing like that in the record and to be clear there's also this court also can't order the executive branch to return someone to the country in those circumstances I think the well the more fundamental thing is we can't we can't order a foreign country to release someone from their criminal justice system exactly exactly I think there would be two big problems with that or ordering a foreign country to release someone from their criminal justice system but also given the foreign terrorist organization angle it would be an interference with the executive branches authority over national security so I think I would anticipate the counter-argument would be the Supreme Court's Abrego Garcia decision completely different situation because there the Supreme Court treated the initial deportation as an unlawful executive branch action that the court needed to unwind and here it's undisputed that the initial deportation was lawful and the Supreme Court's decision in Munaf the Garin 2008 speaks to the exact point you made that courts can't issue orders that would intrude on the sovereignty of another country's ability to prosecute crimes committed on that country's soil and that was even as to American citizens so if that's the rule for American citizens certainly the rule for petitioner all right well we've we've badgered you about mootness so let's give you a chance to make some argument assuming that we disagree with you on the mootness point sure so from what I can tell up until today petitioners argument was that anyone detained in El Salvador or at least any suspected gang member cannot be returned to El Salvador I don't think the record compels or even supports that absurd and dangerous result now of course I acknowledge that there are some broad statements in some of the country conditions reports calling torture systematic or part of a protocol or in some spots even suggesting that all detainees are tortured every single one of these statements if you read them in context it's just a hyperbolic conclusory inference drawn from anecdotes or it clearly lumps in treatment that is not torture within the meaning of cat but that people are colloquial colloquially calling torture or it just relies on leveraging statements by public officials that are clearly expressing moral disapproval of gang members or serving other political purposes like deterrence and of course the tough on crime policy in El Salvador is very popular so I think I think this is a great case to clarify the mootness law in this area but I also think if you disagree with me it would be a good case to follow the Fifth Circuit's lead in Fuentes Pineda v. Bondi where they approved the BIA's decision in matter of ARR basically running through a very similar set of facts in fact there the petitioner was definitely ms-13 was a convicted murderer and the BIA walked through why these types of country reports aren't enough to even support a finding of cat relief and I think the Fifth Circuit in Fuentes Pineda also pointed out that these types of like amnesty international reports often just represent one side in a sharply contested debate they're not especially probative the State Department report is much more probative and by the way if I could just quickly circle back to mootness when we're talking about speculation about things that could change in the petitioner's detention or ongoing criminal proceedings just remember there's one other factor that would need to stay the same for him to get effectual relief which is that he would still need to be eligible for cat deferral so that it's very easy for the agency to go back to the IJ and say you know cat deferral like circumstances have changed he's not eligible if he's in a position where he can take advantage of and return to the United States the current country conditions report for El Salvador says that there aren't significant systemic human rights abuses going on there so he would have to overcome that as well it's just another link in the sort of speculative chain but I understand we're focusing on the merits now so I would just say matter of ARR the BIA's decision really walks through this well the Fifth Circuit has approved it this court should approve it as well and if there are no further questions we ask that you dismiss or deny the petition all right Thank You mr. Weisbrook will you rebuttal for mr. Nolet thank you runners to start just one point to clarify on the jurisdictional question I just want to confirm that the way that this was structured the way that we did it in this case is that we did petition for review of the final order of removal to raise the cat deferral claim which is what Nisralla the scenario that Nisralla addresses as far as their return directive goes in the discussion when did you do that in the IJ before the IJ in the in the petition for review before this court so under 1252 what gives this court jurisdiction to judge bogey's question about this court's jurisdiction so you think it just a naked reference to a final order of removal and an appeal or a petition that otherwise focuses exclusively on cat is enough to invoke our jurisdiction under 1252 yes because again that's exactly what FARA is the statute right that that implements cat here in the country and as Nisralla versus bar explained is that this is precisely the mechanism is that under 1252 a this court has jurisdiction to review final or removal those cases say when there's actually a challenge to the final order of removal not a petition styled as such without any arguments about the final order of removal and only cat arguments so I think you're asking for an extension from Nisralla and maybe there's a basis for it but I don't think it's as simple as you're suggesting well again that is at least that's the mechanism that Nisralla explained this is the mechanism you've invoked there's a significant discussion about the return directive in in the government's argument as well I would just want to point the panel to footnote four and the government's brief in response to what we said in our opening brief the government pointed to its return directive and said it's up to it it has discretion to decide whether or not to invoke it and so the government itself in its brief put it on the table in response to to what we said in our opening brief as far as the substantive discussion about mootness and the standards for mootness again I would point this court to the chafin versus chafin case from the from the Supreme Court that again it was a very analogous scenario it articulated the standard that effectual relief has to be impossible it used the phrase that there was no law of physics that would prevent relief from being you know available and so it was the court even acknowledged that your friend says it has to be likely any possibility under the law of physics and likely that there's a chasm between those two why is he incorrect about that because again I this the standard for mootness in this precise context is that impossibility standard that about the law of comedy in respecting the foreign law proceedings in El Salvador so well you know I would point this court to the Fifth Circuit's decision last year and Aguilar Quintanilla again that's one of the four circuits all of which that have addressed this question of mootness have said that cat deferral only claims are not moot following the removal of the person to the country and in Aguilar Quintanilla the Fifth Circuit again acknowledged that the man had been he had been branded a terrorist upon removal imprisoned and you know there was a press release with his with his picture saying that he would be brought to justice in El Salvador and the Aguilar Quintanilla court found that even in that factual circumstance there was not mootness. You're not arguing that we can order him released from El Salvador in prison are you? No no your honor I'm not arguing that. So the directive would only have potential effect if and when he's released from El Salvador in prison. Which is more than enough again under under this courts mootness standards you know in Chafin versus Chafin again the Supreme Court talked about scenarios involving deportees and involving foreign nations where relief would be uncertain admittedly uncertain the Supreme Court said yes that might be true but again going back to the impossibility standard it said the case is not moot even though those things you know might happen in in those contexts that relief would be uncertain and you know again Mr. Mejia Enriquez you know has he has been you know charged in this extortion conspiracy the the charge you know alleges a very minor role that he had and of course it's a charge that he has denied and he is he is actively defending I am I am out of time go ahead answer yeah just a few more points very very briefly you know the government stood up and called it Mr. Mejia Enriquez a terrorist but you know I believe there's anywhere in the record where that would support that language except perhaps for the mere fact that he has been suspected of being an MS-13 well those two are linked now by administration policy aren't they hasn't MS-13 been designated an FTO that I have to look to confirm but that may be true but but but even so you know he's he's linking it to to MS-13 and you did do you have a response to his charge that that you yourself have told us that he is believed to be a member of MS-13 he is yes that is according to the record right he is suspected of being affiliated with or a member of MS-13 that is true but again you know I'd point to the Aguilar-Quintanilla case for purposes of understanding them you know how this all affects the mootness analysis where somebody was actually affirmatively branded a terrorist upon removal by by the Salvadoran government and the Fifth Circuit did not find circumstances we were talking about Al-Qaeda or ISIS instead of MS-13 would you have any basis to stand here and ask us to try and facilitate direct the executive branch to facilitate the return of a member of one of those FTOs the so the the extraordinary circumstances exception refers to serious national security concerns and serious foreign policy concern we should decide or you should decide whether the president's FTO designation is serious it looks it's on paper it looks pretty serious to me again let me just point to the Fifth Circuit I can provide the it's yeah I would encourage the court it's Aguilar-Quintanilla just last year from the Fifth Circuit again worst facts as far as who the petitioner was and and I believe in that case actually the government agreed with the petitioner that the case was not moot but but in any event the Fifth Circuit went through the analysis has you know given that it is jurisdictional and and agreed that the case is not moot despite despite even more a more dire factual scenario than what we have in this case yeah if there are any further questions from the panel I think I think we're you've done a good job telling us everything we need to know in conjunction with mr. Weiss book arguments were very helpful and the Thank you.